## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JASON M.[1] | : | Case No. 3:21-cv-00272 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

## DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff protectively filed applications for Disability Insurance Benefits and
Supplemental Security Income in July 2018. Plaintiff's claims were denied initially and
upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge
(ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a
"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's
request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award
of benefits or, in the alternative, for further proceedings. The Commissioner asks the
Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management
of the Judicial Conference of the United States has recommended that due to significant privacy concerns
in social security cases federal courts should refer to claimants only by their first names and last
initials.").

Statement of Errors (Doc. 8), the Commissioner's Memorandum in Opposition (Doc. 12),

Plaintiff's Reply (Doc. 13) and the administrative record (Doc. 7).

## II.    BACKGROUND

Plaintiff asserts that he has been under a disability since August 15, 2015. At that

time, he was forty-two years old. Accordingly, Plaintiff was considered a "younger

person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c); § 416.963(c).[2]

Plaintiff has a "limited" 11th grade education.  *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision

(Doc. 7-2, PageID 38-56), Plaintiff's Statement of Errors (Doc. 8), the Commissioner's

Memorandum in Opposition (Doc. 12), and Plaintiff's Reply (Doc. 13). Rather than

repeat these summaries, the Court will discuss the pertinent evidence in its analysis

below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and

Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which … has lasted or can be expected to last for a continuous period of not

less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as
they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.  FACTS

### A.  The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| Step 1: | Plaintiff has not engaged in substantial gainful activity since August 15, 2015, the alleged onset date. |
|---|---|
| Step 2: | He has the severe impairments of "epilepsy, cervical and lumbar degenerative disc disease, aortic aneurysm status post surgery, left elbow epicondylitis, cubital tunnel syndrome status post release, bursitis of the shoulders, diabetes mellitus, depression/bipolar disorder, anxiety, obsessive compulsive disorder (OCD), and alcohol abuse." |

Step 3:        He does not have an impairment or combination of impairments that meets or equals the severity of one in the listed impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:        His residual functional capacity, or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following limitations: (1) standing/walking for about 6 hours in an 8-hour workday; (2) sitting for about 6 hours in an 8-hour workday; (3) never climbing ladders, ropes, or scaffolds; (4) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (5) frequently balancing; (6) occasionally reaching overhead bilaterally; (7) frequently handling, fingering, and feeling bilaterally; (8) no exposure to vibration, flashing lights, unprotected heights, dangerous machinery or commercial driving; (9) performing routine tasks but not at a production rate pace and without strict performance quotas; (10) occasional interaction with supervisors and coworkers but no exposure with the general public; and (11) can tolerate occasional changes to a routine work setting defined as 1-2 per week."

He is unable to perform his past relevant work as a glass installer and roof helper.

Step 5:        Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. 7-2, PageID 42-56.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 56.)

## B. Medical Opinions

### 1. Treating Primary Care Provider Jeremy Sturgill, PA-C

Plaintiff's primary care provider, Certified Physician Assistant Jeremy Sturgill, PA-C, completed a Residual Functional Capacity (RFC) Form in May 2018. (Doc. 7-7, PageID 561-66.) PA-C Sturgill indicated that he had contact with Plaintiff every four to six weeks for chronic pain management, mood and psychiatric care and health care

maintenance. (*Id.*, PageID 561.) He noted the following symptoms: chronic neck pain, anger, anxiety, depressive mood with psychosis, intermittent headaches, and neuropathy symptoms in the right lower extremity. (*Id.*) He listed the following clinical findings and test results: degenerative changes on x-ray cervical spine, pending EMG for possible right leg neuropathy, and procedure for coil embolization of brain aneurysm. (*Id.*) He diagnosed Plaintiff with degenerative disc disease of the cervical spine, major depression with mood disorders, brain aneurysms, and Type II diabetes. (*Id.*)

PA-C Sturgill noted that Plaintiff had been treated with physical therapy, cervical spine injections, NSAIDs/Tylenol, neuropathic pain medication, muscle relaxers, and opioids. (Doc. 7-7, PageID 562.) He stated that Plaintiff has been or is being seen by a pain specialist/neurosurgeon. (*Id.*) He stated that although Plaintiff's diabetes and brain aneurysm were improving, his chronic neck pain is "stable but uncontrolled." (*Id.*)

PA-C Sturgill opined that Plaintiff is unable to stand for six to eight hours, explaining: "Per patient, standing worsens symptoms." (Doc. 7-7, PageID 562.) He stated that Plaintiff could only stand for two to three hours. (*Id.*) PA-C Sturgill opined that "per patient," Plaintiff is also unable to sit for six to eight hours. (*Id.*) Instead, Plaintiff could only sit for two to three hours. (*Id.*) Asked to explain the sitting and standing limitations, PA-C Sturgill stated: "Pain in neck worsening, must lie down." (*Id.*, PageID 563.) He stated that Plaintiff must lie down during the day "to relieve pressure in neck." (*Id.*) Finally, PA-C Sturgill stated that Plaintiff can walk "a few blocks" without stopping. (*Id.*)

Asked about Plaintiff's other physical limitations, PA-C Sturgill opined that Plaintiff could rarely reach up above shoulders; frequently reach down toward the floor,

carefully handle objects and handle with fingers; and consistently reach down to waist level. (Doc. 7-7, PageID 563.) He opined that Plaintiff could lift and carry less than five pounds on a regular basis and during an eight-hour period. (*Id*.) He opined that Plaintiff would have difficulty bending and turning his neck and back. (*Id.*, PageID 564.)

PA-C Sturgill noted that Plaintiff reported chronic and sharp pain in his neck, and burning pain in his right leg. (Doc. 7-7, PageID 564.) Plaintiff experienced pain daily and described the level as an 8 or 9 out of 10. (*Id*.) PA-C Sturgill found Plaintiff's complaints of pain to be credible and appropriate, and noted Plaintiff's requests for alternative pain medications. (*Id.*, PageID 564-65.) Asked to identify an objective medical reason for the pain, PA-C Sturgill noted cervical radial symptoms and "uncontrolled DM" (presumably diabetes mellitus). He opined that Plaintiff would not be able to return to his regular employment because pain would prevent him from functioning at that level. (*Id.*, PageID 565.) When asked whether Plaintiff could do other work, he stated: "Yes, but limited with mental health and pain." (*Id*.)

The ALJ found PA-C Sturgill's opinions "somewhat persuasive," explaining:

Given the nature of what seem to be the claimant's most significant physical impairments, i.e., his cervical spine and bilateral upper extremities, it is certainly reasonable to expect he experiences some associated limitations in his physical capacity, such as his manipulative and reaching abilities. Further, it is undisputed that the claimant is unable to perform his past work (see Finding No. 6). So, in these respects, Mr. Sturgill's assessment is somewhat persuasive. However, while the claimant has exhibited some tenderness and muscle spasms and decreased range of motion of the cervical and lumbar spine on physical examination (Exhibits B23F at 52 / B24F at 5), restricting him to the level of work reflected in Mr. Sturgill's assessment is disproportionate to the entirely conservative measures of treatment he has received for his back and neck complaints, as well as the "mild" degree of disc degeneration shown by imaging evidence

7

of [Plaintiff]'s cervical spine and neck and "mild" degenerative changes of
the bilateral shoulders.

(Doc. 7-2, PageID 50.)

### 2.    Treating Mental Health Provider Tracy Pankey, NP

Plaintiff's treating mental health provider, Nurse Practitioner Tracy Pankey, CNP,
completed a Mental Impairment Questionnaire in December 2019. (Doc. 7-9, PageID
1286-88.) She indicated she had been treating Plaintiff since May 2018. (*Id.*, PageID
1286.) NP Pankey diagnosed Plaintiff with bipolar disorder, anxiety disorder and
obsessive-compulsive disorder. (*Id.*) She identified the following signs and symptoms:
poor memory, social withdrawal or isolation, obsessive or compulsions, difficulty
thinking or concentrating, and hostility and irritability. (*Id.*)

NP Pankey opined that Plaintiff would be off task for 20% or more of the time per
week and would be absent from work more than three times per month. (Doc. 7-9,
PageID 1286.) She assessed a marked limitation in Plaintiff's ability to learn, recall, or
use information to perform work activities, a marked limitation in his ability to relate to
and work with supervisors, coworkers and the public, a marked to extreme limitation in
his ability to focus attention on work activities and stay on task at a sustained rate, and a
marked limitation in his ability to regulate emotions, control his behavior, and maintain
well-being in a work setting. (*Id.*, PageID 1288.) She referred to her treatment notes as
support for her opinions. (*Id.*)

The ALJ found the opinions of NP Pankey only "somewhat persuasive":

In light of his mental health diagnoses, it is plausible to conclude that the
claimant does exhibit some functional difficulties particularly related to

8

mood variance. However, his episodes of hospitalization in 2018 were the result of short-term symptom exacerbation. Beyond these admissions, the claimant's treatment has remained conservative on a routine outpatient basis. Hence, a fair reading of the record does not demonstrate that Ms. Pankey's findings are indicative of the claimant's ordinary level of psychological functioning reflected in progress notes, the most recent of which describes rational, linear, logical thought processes; no thought content abnormalities, intact judgment/insight; appropriate demeanor; and no cognitive deficits beyond "some" forgetfulness (Exhibit 16F at 5). This dichotomy is especially well-illustrated by the claimant's own reports that symptoms positively respond to medication management. Thus, Ms. Pankey's opinion evidence is not entirely consistent with and supported by the balance of record and is only somewhat persuasive.

(Doc. 7-2, PageID 45.)

### 3. State Agency Psychological Reviewers Dr. Karla Delcour, Ph.D. and Dr. Bonnie Katz, Ph.D.

State agency psychological consultants Dr. Karla Delcour, Ph.D. and Dr. Bonnie Katz, Ph.D. reviewed Plaintiff's records at the initial and reconsideration stages. They opined that Plaintiff "is likely to have difficulty with complex tasks but he is able to sustain attention and concentration to carry out routine, repetitive, and 2-3 step work tasks with adequate persistence and pace." (Doc. 7-3, PageID 141, 175.) They opined that due to his irritability, Plaintiff "would not be suitable for public contact positions but can handle brief and superficial contact with coworkers and ordinary levels of supervision in a customary work setting." (*Id.*, PageID 142, 175.) They also opined that Plaintiff's "ability to handle stress and pressure in the work place would be reduced but is adequate to handle tasks that do not involve strict time limitations or production standards or frequent changes." (*Id.*, PageID 142, 176.)

The ALJ found these opinions "persuasive," explaining:

Pursuant to AR 98-4(6), DDD reviewing psychologists declined to adopt the findings in the prior ALJ decision which held that the claimant did not have a "severe" mental impairment and had no more than mild limitations in any functional area (Exhibit B1A at 9, 10). Thus, the undersigned finds Drs. Delcour and Katz correctly concluded there is new and material evidence as to the claimant's mental impairments, and therefore, the prior ALJ decision is not adopted pursuant to *Drummond* and AR 98-4(6). In this respect, their assessments are persuasive and many of their imposed restrictions have essentially been incorporated into the [RFC]…

(Doc. 7-2, PageID 46.)

## V.     LAW AND ANALYSIS

Plaintiff contends that the ALJ erred in his consideration of the opinions rendered by his primary care provider, Jeremy Sturgill, PA-C, his treating mental health provider, Tracey Pankey, NP, and state agency reviewing psychologists Dr. Karla Delcour, Ph.D. and Dr. Bonnie Katz, Ph.D. Plaintiff also argues that the ALJ erroneously omitted several limitations identified by the state agency reviewers from his RFC. For the reasons set forth below, Plaintiff's arguments are well-taken.

### A.     Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

10

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[3] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

## B.    Harmless Error

Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends, however, upon the nature of the regulation and the importance of its procedural safeguard. *Id*. For example, an ALJ's failure to comply with the treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion … or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c(b)(2), can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, which applies to violations of the treating physician rule, should also apply to violations of Section 404.1520c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases). This Court agrees that the harmless error test articulated in *Wilson* should apply to violations of 20 C.F.R. § 404.1520c(b)(2).

The mandatory articulation requirement in Section 404.1520c(b)(2) is similar to the "good reasons" requirement of the treating physician rule. Under that rule, an ALJ who declines to give controlling weight to the opinion of a treating physician must articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996). The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 404.1520c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 404.1520c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. *Id*. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

The mandatory articulation requirement in Section 404.1520c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when

13

determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 404.1520c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 404.1520c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id*. The Commissioner's use of mandatory language (the ALJ "*will* explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 404.1520c(b)(2) will make it difficult for a court to determine whether the error is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 U.S. Dist. LEXIS 130309, *14-15 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 404.1520c(b)(2).

14

For these reasons, this Court concludes that the *Wilson* harmless error test applies to violations of 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546.

### C.  The ALJ Erred In His Evaluations Of The Medical Opinion Evidence

#### i.  *Jeremy Sturgill, PA-C*

The ALJ limited his analysis of PA-C Sturgill's opinion to "what seem to be the claimant's most significant physical impairments, i.e., his cervical spine and bilateral upper extremities." (Doc. 7-2, PageID 51.) The ALJ found PA-C Sturgill's opinion only somewhat persuasive, reasoning that his proposed limitations were "disproportionate to the entirely conservative measures of treatment [Plaintiff] has received for his back and neck complaints, as well as the 'mild' degree of disc degeneration showed by imaging evidence [] and 'mild' degenerative changes of the bilateral shoulders." (Doc. 7-2, PageID 50.) The Court concludes that the ALJ's finding that Plaintiff received "entirely conservative treatment" is not supported by substantial evidence. Further, the ALJ erred by failing to assess the persuasiveness of PA-C Sturgill's opinion regarding the effect of neuropathy and leg pain caused by diabetes mellitus.

15

The medical records show that Plaintiff's treatment has not been conservative. Plaintiff frequently received injections. (Doc. 7-7, PageID 741, 747, 757 & 762; Doc. 7-9, PageID 1481, 1486, 1489, 1493, 1497, 1500, 1504, 1508, 1512, 1514-15, 1519, 1521, 1525, 1527, 1545, 1550, 1552, 1556, 1558, 1569, 1574, 1577, 1582, 1586 & 1594.) He was prescribed medication, including hydrocodone, and had dedicated pain management treatment. (*Id.*) Providers prescribed compound creams, a back brace and a TENS unit. (Doc. 7-7, PageID 741, 759-63.) Plaintiff had surgery on his right upper extremity and underwent physical therapy. (Doc. 7-9, PageID 1433.) The ALJ's finding that Plaintiff has received "entirely conservative" treatment is not supported by substantial evidence.

Additionally, the ALJ did not acknowledge that PA-C Sturgill did not base his proposed limitations solely on Plaintiff's back, neck and shoulder impairments. Instead, PA-C Sturgill also noted that Plaintiff reported burning pain in his right leg and suffered from neuropathy. (Doc. 7-7, PageID 564.) Consistent with these reports, PA-C Sturgill stated that objective medical reasons for Plaintiff's pain were cervical radial symptoms *and* uncontrolled diabetes mellitus. (*Id.*, PageID 565.) Yet, the ALJ only considered PA-C Sturgill's opinions as they related to Plaintiff's back, neck and shoulder impairments. Accordingly, to the extent that the ALJ ignored PA-C Sturgill's opinions as they relate to his other severe impairments and symptoms of pain, the ALJ also erred.

### ii.    *Tracy Pankey, NP*

The ALJ's assessment of NP Pankey's opinion is also not supported by substantial evidence. NP Pankey began treating Plaintiff in May 2018 following the first of two psychiatric hospitalizations that same year. (Doc. 7-7, PageID 780.) Although the ALJ

16

minimized these hospitalizations by finding that they resulted from "short-term symptom exacerbation," the ALJ's findings are not supported by substantial evidence.

With regard to Plaintiff's first hospitalization, the ALJ states he was hospitalized "after threatening to commit suicide with a gun. (Exhibit B17F). On admission, however, the claimant denied suicidal ideation stating that he was "just having a bad day" and had been drinking alcohol after being sober one week." (Doc. 7-2, PageID 44.)

This description greatly minimizes the severity of the circumstances surrounding Plaintiff's first hospitalization. According to the Initial Psychiatric Evaluation: "Plaintiff was taken to MVH [emergency room] by cops because **_he wanted to have shoot out with police_**. He threatened "to put gun in his mouth and pull the trigger." He also "**_discharged [his] firearm through [the] roof_**." (Doc. 7-9, PageID 1319 (emphasis added).) Although Plaintiff did state that he drank alcohol before the incident, he also stated that he was depressed because he was not working, felt worthless, and was dealing with chronic headaches and back pain. (*Id*.) Also, "his depression got worse after brain surgery three (3) weeks ago because it did not relieve [his] headaches." (*Id*.) Plaintiff stated that he "came home and for no reason, he pulled out [a] gun in garage and shot through roof." (*Id*.) The police arrived, removed the gun, and removed him from his home. (*Id*.) The records confirm that Plaintiff was involuntarily hospitalized. (*Id*., PageID 1307.)

Thus, Plaintiff did not just threaten suicide with a gun; he actually fired the weapon through the roof and also threatened to have a shoot-out with police. Further, although the ALJ suggests that Plaintiff's actions were caused by drinking alcohol and

having a bad day, Plaintiff stated that he was depressed because of not working, feeling worthless, having chronic neck and pain, and having a failed treatment for his headaches.

With regard to Plaintiff's second hospitalization, the ALJ states that Plaintiff "presented for psychiatric stabilization again in November 2018; he endorsed increased depression and suicidal ideation with a plan to overdose and had been drinking alcohol." (Doc. 7-2, PageID 44 (citations omitted).)

Again, the ALJ's description greatly minimizes the severity of the circumstances surrounding Plaintiff's second hospitalization. The Psychiatric Evaluation states:

> [Plaintiff] reports to this hospital facility involuntarily endorsing suicidal ideation and a recent suicide attempt via overdose of 50 Zanaflex pills. The patient is currently unable to contract for safety and continues to have death wishes. The patient has been increasingly agitated and irritable. Documentation suggests that the patient suffers from chronic back and neck pain, which led to his suicidal ideation. When his wife came home from work, she noted that he was very somnolent and she then noted that his prescription bottle of Zanaflex which was recently filled was empty. The patient was then taken to a local emergency department where he was medically stabilized and then transferred to this unit for further evaluation and treatment. The patient reports that he has had difficulty in recent weeks initiating and maintaining sleep. He reports he is in large part having difficulty sleeping because of his chronic pain issues…. He has been hospitalized for further evaluation and treatment and safety and stabilization purposes.

(Doc. 7-7, PageID 809.)

Thus, Plaintiff was not hospitalized a second time because he had a "plan to overdose"; instead, he was involuntarily hospitalized *after* he overdosed and his wife fortunately found in time to save his life. Further Plaintiff did not attempt to commit suicide because he had been drinking alcohol; instead, he stated that he had been having difficulty sleeping because of his chronic pain issues.

18

Thus, even though the ALJ correctly noted that treatment after each hospitalization helped alleviate Plaintiff's suicidality, the evidence in the record shows that his mental health conditions are extremely serious and not short term. To the contrary, Plaintiff was hospitalized for suicidality on two occasions that were several months apart. The ALJ's findings regarding the severity of Plaintiff's mental health symptoms, and thus the persuasiveness of NP Pankey's opinions, are not supported by substantial evidence.

### iii. Dr. Karla Delcour, Ph.D., and Dr. Bonnie Katz, Ph.D.

The ALJ erred in considering the state agency reviewing psychologists' opinions. The ALJ was required to address the consistency and supportability factors in assessing the opinions of Dr. Delcour and Dr. Katz. 20 C.F.R. § 404.1520c(b). The ALJ did not consider either factor in this case. This error is not harmless.

Here, the ALJ found the opinions of Dr. Delcour and Dr. Katz to be "persuasive," but he did not adopt all their limitations. Although the ALJ is not required to adopt all the limitations set forth in an opinion that is found persuasive, this Court has consistently held that an ALJ is required to explain a decision not to adopt such limitations. *See O'Ryan v. Comm'r of Soc. Sec.*, No. 3:14-CV-125, 2015 WL 6889607, at *4 (S.D. Ohio July 30, 2015), report and recommendation adopted, No. 3:14-CV-125, 2015 WL 4934190 (S.D. Ohio Aug. 18, 2015); *Howard v. Comm'r of Soc. Sec.*, No. 3:14-CV-364, 2015 WL 8213614, at *4 (S.D. Ohio Dec. 9, 2015), report and recommendation adopted, No. 3:14-CV-364, 2016 WL 99114 (S.D. Ohio Jan. 7, 2016) ( "[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination —especially when such limitations are set forth in opinions the ALJ weighs favorably");

19

*see also* SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"). The ALJ failed to do so here.

More specifically, the ALJ did not adopt the limitation of "brief and superficial contact with coworkers," *see* Doc. 7-3, PageID 142, 175, and instead limited Plaintiff to "occasional interaction with [] coworkers." (Doc. 7-2, PageID 50.) These two terms are not interchangeable. While "occasional contact" refers to the quantity of time spent with individuals, "superficial contact" goes to the quality of the interactions. The ALJ's conclusion that Plaintiff is capable of occasional interactions, without including a limitation that restricts him to superficial interactions, constitutes reversible error. *See Garvin v. Comm'r of Soc. Sec.*, No. 2:20-cv-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (Deavers, M.J.), report and recommendation adopted, No. 2:20-cv-2566, 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, D.J.), *citing, e.g., Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vascura, M.J.), report and recommendation adopted sub nom. *Hutton v. Comm'r of Soc. Sec. Admin.*, No. 2:20-cv-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, D.J.) (reversing and remanding where ALJ explanation was lacking because "superficial interaction" is a well-recognized, work-related limitation); *Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v.*

*Comm'r Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018)

(Vascura, M.J.). The ALJ erred by failing to include this limitation.

This error is not harmless. Specifically, the Court finds that the opinions of these

state agency reviewing psychologists are not patently deficient; the ALJ did not make

findings consistent with their opinions; and the goals of the regulation requiring the ALJ

to articulate his consideration of the supportability and consistency factors was not met.

Accordingly, reversal is required. *Wilson*, 378 F.3d at 547.

## VI.    CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm,

modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate

award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041

(6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming

or where the evidence of disability is strong while contrary evidence is lacking. *Faucher*

*v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is neither overwhelming nor strong while contrary evidence is

lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding

this case to the Social Security Administration pursuant to Sentence Four of Section

405(g) for the reasons stated above. On remand, the ALJ should conduct proceedings

consistent with this opinion, and evaluate Plaintiff's disability claim under the required

five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.     Plaintiff's Statement of Errors (Doc. 8) is GRANTED;

2.     The Court REVERSES the Commissioner's non-disability determination;

3.     No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.     This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.     This case is terminated on the Court's docket.


*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

22